UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OTIS STONE,

                       Plaintiff,                            MEMORANDUM
                                                      and ORDER
      -against-                                      11-CV-3932 (SMG)

PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, POLICE CHIEF JOHN RYAN, OFFICER
SCOTT SEAMON, OFFICER JOHN TUCCI, and
OFFICER JOHN CURNYN,

                       Defendants.
------------------------------------------------------------X
GOLD, S., U.S.M.J.:

## INTRODUCTION

       This fee application arises from a civil rights action, brought under 42 U.S.C. § 1983,

against the Port Authority of New York and New Jersey and four members of the Port

Authority's police department.  Plaintiff Otis Stone initially asserted ten claims against the Port

Authority and one of its police officers, John Ryan, alleging excessive force, illegal search and

seizure, racial discrimination, harassment, interference with economic opportunity, assault and

battery, malicious prosecution, failure to train and supervise officers, and cruel and unusual

punishment.  Am. Compl. ¶ 23, 57, Docket Entry 4.  The parties consented to the exercise of

jurisdiction by a United States Magistrate Judge in March of 2013.  Docket Entries 27, 28.

       On May 30, 2013, plaintiff Stone filed a second amended complaint adding three

additional officers as defendants.  Docket Entry 32.  The defendants moved for summary

judgment on August 15, 2013, Docket Entries 37-43; I granted their motion in part on July 8,

2014, dismissing all but two of plaintiff's claims.  Mem. and Order, Docket Entry 63.  Plaintiff's

unlawful search and seizure claim as to private areas of his restaurant survived summary

judgment, as did his claim that the Port Authority failed to adequately train its officers in search

and seizure law.  Mem. and Order, Docket Entry 63, at 21, 29-30.  These remaining claims were

put before a jury in a trial that began on December 1, 2014, and ended when the jury announced

its verdict on December 5, 2014.  Docket Entries 80, 82-90.  The jury found that Officer Ryan's

actions constituted an unlawful search and seizure in violation of plaintiff's constitutional rights,

but that the Port Authority was not liable for failure to train its officers properly.  The jury

awarded plaintiff Stone $2,500 in compensatory damages and $25,000 in punitive damages

against defendant Ryan.  Jury Verdict, Docket Entry 90.  No liability was found against the other

officers.  *See* Jury Verdict, Docket Entry 90.

Plaintiff Stone now moves for attorney's fees pursuant to 42 U.S.C. § 1988.  In support of

the motion, plaintiff's counsel, Aymen Aboushi, has submitted a memorandum of law, an

affidavit, and time records reflecting his work on this case.  Docket Entry 92.  In his affidavit,

Aboushi details his litigation experience and career background, explaining that he has been

admitted to practice for more than eight years and served, before joining his current firm, as a

law clerk in federal court and then as an attorney for the Department of Justice in the Attorney

General's Honors Program.  Aboushi Aff. ¶¶ 2-14.  Aboushi states that his usual hourly rate is

between $450 and $550 an hour and that his retainer agreement in this case provided for an

hourly rate of $450.  Aboushi Aff. ¶¶ 17, 54; Pl. Mem. at 8.  Nevertheless, Aboushi seeks an

award based on a rate of $425 per hour for his work on this case.  Pl. Mem. at 8.  Aboushi also

reports that he worked on the case with the help of a paralegal at his firm who normally bills at a

rate of $150 per hour.  Aboushi Aff. ¶¶ 44-46.  Rather than requesting her full rate, Aboushi asks

that the award compensate his firm's paralegal work at a rate of $125 per hour.  Aboushi Aff.

¶ 46.

Aboushi indicates in his fee application that he does not seek fees for time spent working on claims that were ultimately dismissed on summary judgment and that those hours are not listed in the invoices submitted in support of the fee application. Aboushi Aff. ¶¶ 33-37. That time, according to Aboushi, amounts to $25,255 in fees and costs for which he does not request compensation. Aboushi Aff. ¶ 37. Aboushi claims that plaintiff is entitled to an award of $144,988.05 for time he and his paralegal spent, through trial and preparation of the pending fee application, compensated at rates of $425 and $125 per hour, respectively. Reply Invoices, Docket Entry 95-3.

Defendant Ryan filed a memorandum, affidavit, and exhibits in response to Stone's motion for attorney's fees. Docket Entries 93-94.[1] Defendant argues that the number of hours for which Aboushi requests compensation are unreasonable and that his requested hourly rate is excessive. Def. Mem. at 3-4, 5-6. For example, defendant objects to the amount of time Aboushi billed for writing letters to defendants' counsel because the letters were unnecessary or too short to have taken the amount of time Aboushi claims. Def. Mem. at 4.[2] Defendant also argues that Aboushi's invoices are vague and therefore do not permit meaningful scrutiny. Def. Mem. at 5. Defendant next contends that Aboushi's experience, his level of success, and the prevailing rates in the Eastern District of New York dictate a lower hourly rate than the one he requests, although defendant also seems to confuse Aboushi's normal rate, $450, with his requested rate, which is $425. Def. Mem. at 5-6. Finally, defendant suggests that, because plaintiff's success at trial was limited to a finding of liability against only one of the defendants,

_____

[1] Although counsel has styled her submission as made on behalf of all defendants, plaintiff prevailed only against defendant Ryan, and he is therefore the only defendant liable for attorney's fees.

[2] Defendant also objects to plaintiff's attempt to recover a $350 filing fee because his case was originally filed in state court. Def. Mem. at 5. In his Reply, Aboushi acknowledges this discrepancy and resubmits his invoices, taking into account a lower filing fee amount, $210. Pl. Reply at 4; *see also* Final Invoices, Docket Entry 95-3. Because plaintiff has taken it upon himself to adjust the amount of the filing fee, the Court need not further address this point.

and because the damage award was, in his estimation, relatively low, the fee award should be reduced accordingly.  Def. Mem. 7-8.

After a careful review of the billing records and other materials submitted by the plaintiff, as well as the materials filed by defendant, I hereby grant plaintiff's motion for fees and costs and award, for the reasons stated below, $86,560 in fees and $2,609.61 in expenses, for a total of $89,169.61.

## DISCUSSION

**I.      Standard for Awarding Attorney's Fees in a Civil Rights Case**

A plaintiff who prevails in an action brought under 42 U.S.C. § 1983 is eligible to receive an award of reasonable attorney's fees.  42 U.S.C. § 1988(b).  The Supreme Court has explained that a prevailing plaintiff is one who "has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit."  *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal quotation marks and brackets omitted).  In other words, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."  *Id.* at 792.  Where a defendant makes an offer of judgment under Federal Rule of Civil Procedure 68 prior to trial, a plaintiff who "prevails" according to the above definition is nonetheless precluded from recovering attorney's fees if the judgment obtained at trial is for less than the amount of the Rule 68 offer. *Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 245-46 (E.D.N.Y. 2013).

Here, as the prevailing party in the litigation, Stone is entitled to a fee award.  Defendants made a Rule 68 offer of judgment in the amount of $15,001, inclusive of attorney's fees and costs.  Docket Entry 93-1.  While defendant Ryan may argue that the jury award was relatively low, it exceeded the offer of judgment by a significant amount.  Furthermore, the fact that the

4

jury's verdict was rendered against only one of the defendants does not alter plaintiff's status as the prevailing party; the inquiry is only into whether the plaintiff succeeded on some of his claims. *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998). While "[n]o fees should be awarded for time spent pursuing a failed claim if it was 'unrelated' to the plaintiff's successful claims," a fee award is warranted when a plaintiff achieves "substantial relief" and should be based upon counsel's time spent on all claims involving a common core of facts and related legal theories. *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).

The reasonableness of an attorney's requested fees is a matter within the district court's discretion. *LeBlanc-Sternberg*, 143 F.3d at 758; *Garcia v. City of New York*, 2013 WL 5574507, at \*2 (E.D.N.Y. Oct. 9, 2013). "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Garcia*, 2013 WL 5574507, at \*2 (internal quotation marks and brackets omitted) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). When determining a reasonable rate for attorney's fees, courts consider "the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

## II.     Reasonable Hourly Rate

"The reasonable hourly rate reflects factors including the complexity of the case and the quality of counsel's representation." *Stanczyk*, 990 F. Supp. 2d at 247 (citing *Arbor Hill*, 522 F. 3d at 190). There are in addition numerous case-specific variables that courts take into account when determining attorney's fees, including "the attorney's experience and expertise, the novelty and complexity of the issues presented, and the overall success achieved in the case." *See Chen v. Cnty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). For example, if some of the

plaintiff's claims are dismissed or otherwise do not succeed, the fee may be reduced to take these circumstances into account. *Stanczyk*, 990 F. Supp. 2d at 247. Ultimately, it is left to the Court to determine what, if any, fees should be awarded, and the burden is on the prevailing party "to justify the reasonableness of the requested rate." *Chen*, 927 F. Supp. 2d at 71 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Courts in the Second Circuit follow the forum rule, which dictates that "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Arbor Hill*, 493 F.3d at 119). In the Eastern District of New York, courts in recent years have approved hourly rates from $300 to $450 for partners in law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates. *Sass v. MTA Bus Co.*, 6 F. Supp 3d 238, 261 (E.D.N.Y. 2014) (collecting cases); *Hargroves v. City of New York*, 2014 WL 1271039, at *4 (E.D.N.Y. Mar. 26, 2014); *In re Nassau Cnty. Strip Search Cases*, 12 F. Supp. 3d 485, 498 (E.D.N.Y. Apr. 2, 2014); *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 3766530, at *5 (E.D.N.Y. Jul. 16, 2013). Courts in this district have awarded rates of between $70 and $100 per hour for work done by paralegals. *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012).

Although, as noted above, rates as high as $450 per hour have been approved, "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their field." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012). For example, in *Sass*, an employment discrimination case, the Court allowed an hourly rate of $425 for a solo practitioner who had been practicing for over

thirty years and had litigated approximately 500 employment discrimination cases. *Sass*, 6 F. Supp. 3d at 263; *see also Favors v. Cuomo*, 39 F. Supp. 3d 276, 307 (E.D.N.Y. 2014) (approving an hourly rate of $450 for an attorney who had been practicing civil rights law since 1978 and was the executive director of the Center for Law and Social Justice at Medgar Evers College). In contrast, a Court found an hourly rate of $350 to be appropriate for a well-respected civil rights attorney with thirteen years of experience who had "litigated a large number of civil rights cases and is a first-rate trial lawyer." *Struthers v. City of New York*, 2013 WL 5407221, at *8 (E.D.N.Y. Sept. 25, 2013).

In support of his request for an hourly rate of $425, Aboushi stresses that he has been practicing law for more than eight years, and that his experience includes service as a federal court law clerk and as a trial attorney in the United States Attorney General's Honors program. Aboushi Aff. ¶¶ 3-5. Aboushi asserts that, as an attorney with the Department of Justice, he received excellent training and litigated several complex cases. Aboushi Aff. ¶¶ 6-8. After completing his service at the Department of Justice, Aboushi became a partner at the Aboushi Law Firm, where he focuses on civil rights and complex civil litigation. Aboushi Aff. ¶¶ 9-11. He has worked on "more than 30 civil rights actions in Federal and State Courts" . . . and has "successfully tried several State and Federal jury cases." Aboushi Aff. ¶ 11. Aboushi routinely charges his clients hourly rates of between $450 and $550. Aboushi Aff. ¶ 17.

In addition to his own personal qualifications, Aboushi emphasizes the size of the jury award to plaintiff in this case, and in particular that the jury awarded punitive as well as compensatory damages. Aboushi Aff. ¶ 18. He points out that the punitive damage award, $25,000, was ten times more than the compensatory damage award. Aboushi Aff. ¶ 18.

Furthermore, Aboushi contends that his litigation strategy was complex because he used the defendants as the plaintiff's own witnesses to establish his case. Aboushi Aff. ¶ 30.

Defendant argues that Aboushi's requested rate is higher than his experience level warrants. Def. Mem. at 6. Defendant suggests that Aboushi has not been practicing law long enough to merit an hourly rate on the high end of what is typically awarded in this district, although he does not suggest an appropriate lower rate. Def. Mem. at 6.

Aboushi is a skilled litigator who represented his client well at trial, and his credentials are impressive. Nevertheless, he has not yet achieved the stature to merit the highest rates in the district. Even attorneys with decades of litigation experience are often denied such rates. *See Mary Jo C. v. Dinapoli*, 2014 WL 7334863, at \*6-\*7 (E.D.N.Y. Dec. 18, 2014) (awarding fees at a rate of $350 per hour to attorney with over 30 years of experience who was a clinical professor at Touro Law Center). Furthermore, this case was not so complicated that attorney's fees should be increased on that basis. Finally, while an award of punitive damages does suggest that Aboushi is a persuasive advocate, the size of the punitive damages award is noteworthy only because the compensatory damages awarded were nominal. Therefore, based on Aboushi's level of experience and the nature of the case, I conclude that the reasonable hourly rate for Aboushi's time is $350 per hour.

A portion of the hours billed in this case are for work done by Ms. Calcano, a paralegal at Aboushi's law firm. Aboushi Aff. ¶ 45. Aboushi states that Calcano's current billing rate is usually $150 per hour, but he requests a rate of $125 per hour for the time she spent on this case. Aboushi Aff. ¶ 46. Calcano's requested rate may be higher than what is normally awarded, but I note that she devoted a significant amount of time to the case, and that Aboushi did not have any associates or co-counsel working with him. Although she is a paralegal, the billing records

indicate that Calcano perform tasks that are often completed by junior associates at larger firms,

such as conducting legal research, reviewing discovery documents and motion papers, and

preparing exhibits. Docket Entry 92-2. Because there was no associate attorney on the case, and

because Calcano performed some tasks that might have been assigned to an associate, I find that

her requested rate of $125 per hour is reasonable.

III.    **Number of Hours Expended**

Aboushi seeks to be awarded fees for a total of 390.5 hours, 306 of which are for his own

work and 84.5 of which are for work undertaken by Calcano. Aboushi Aff. ¶¶ 43-45. He also

seeks to be reimbursed for $4,375.55 in expenses.[3]

An attorney requesting a fee award bears the burden of supporting his or her application

by submitting "accurate, detailed and contemporaneous time records." *Garcia*, 2013 WL

5574507, at \*6 (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136,

1147-48 (2d Cir. 1983)). To determine whether the number of requested hours is reasonable, the

Court "must examine the hours expended by counsel and the value of the work product of the

particular expenditures to the client's case." *Garcia*, 2013 WL 5574507, at \*6 (internal

quotation marks omitted) (quoting *DiFilippo v. Morizio*, 759 F. 2d 231, 235 (2d Cir. 1985)). A

Court may reduce the award requested, including by an appropriate across-the-board percentage,

if the time records are inadequate. *See Garcia*, 2013 WL 5574507, at \*6. A Court should also

exclude from any award "excessive, redundant or otherwise unnecessary hours, as well as hours

dedicated to severable unsuccessful claims." *Garcia*, 2013 WL 5574507, at \*6 (quoting

*Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Defendant objects to the number of hours for which Aboushi requests to be compensated.

Def. Mem. at 4. Specifically, he objects to the amount of time he billed for preparing letters to

---

[3] This is the adjusted amount of expenses, taking into account the state court filing fee of $210.

be sent to the defendants or to the Court. Def. Mem. at 4. Defendant also claims that some of

those letters were related to discovery disputes about claims that were dismissed on summary

judgment. Def. Mem. at 5. Defendant has provided some of Aboushi's letters as exhibits to his

memorandum. Docket Entry 93-6. In addition to his objection regarding the letters, defendant

argues that Aboushi's billing records are vague and lack appropriate specificity. Def. Mem. at 5.

Defendant's argument that Aboushi billed an unreasonable amount of time for preparing

letters is persuasive. Many of the letters are, as defendant points out, simple cover letters of only

one or two sentences, yet Aboushi's records indicate he spent half of an hour on them; indeed, it

appears that Aboushi consistently billed in increments of time no briefer than half of an hour.

Some reduction in the requested amount is therefore warranted. Defendant's contention that the

letters related to the dismissed claims is less compelling; my review of the letters cited by

defendant indicates that they generally concern all of plaintiff's claims, including the one on

which he prevailed.

Defendant also correctly points out that Aboushi's invoices are less clear and specific

than most billing records. For example, the dates of the billed time are not always indicated,

making it difficult to compare billing entries to the activities in the case reflected on the Court's

docket sheet. Moreover, the manner in which entries are listed and grouped makes it difficult to

ascertain the reasonableness of the hours claimed. While the descriptions of tasks performed are

sufficiently specific, large blocks of time are billed together, making it hard to assess whether the

amount of time spent on the various tasks listed is appropriate. For example, the first entry in the

records reads, "Investigation and Complaint and Notice of Claim, Review of Client Materials,

Client and Witness Interviews," and 25 hours are billed under that entry. Docket Entry 92-2, at

1. Another entry reads, "Review materials for trial, trial strategy, review record trial prep, read

10

depositions, prepare direct and cross outlines, etc.," and 30 hours are billed. Docket Entry 92-2, at 4. While the activities listed may well have taken the amount of time billed, Aboushi's block billing practices make it hard to determine that with confidence.

Applications for attorney's fees must be accompanied by "contemporaneous time records" specifying, "for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. Defendant does not argue that Aboushi's time records fail to satisfy the requirements set forth in *Carey*, but it is clear that the records meet those requirements, if at all, just barely. Because of the deficiencies in the billing records, and due to the excessive billing for cover letters, I reduce the hours sought by 20%. *See Wise v. Kelly*, 620 F. Supp. 2d 435, 451-52 (S.D.N.Y. 2008) (imposing a 20% percent reduction of time entries that impermissibly grouped multiple discrete tasks into one entry); *see also Molefi v. Oppenheimer Trust*, 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007) (imposing a 15% reduction due to impermissible block billing and some excessive billing).

Finally, defendant argues that a further reduction is warranted because plaintiff succeeded on only one of his claims and against only one defendant, and was awarded $2,500 in compensatory damages and "merely" $25,000 in punitive damages. Def. Mem. at 7. The Court does not agree with defendant's characterization of plaintiff's degree of success at trial. Indeed, the award of punitive damages in addition to the relatively small amount of compensatory damages demonstrates that plaintiff successfully argued his case at trial and achieved significant vindication for himself and possibly even deterred future violations of the rights of others. Looking at the case as a whole, however, many of the plaintiff's initial claims—including those for racial discrimination and malicious prosecution—were dismissed on summary judgment. *See* Mem. and Order at 14-17, 21-24. Although Aboushi states that his fee application does not

include hours worked on those claims, the billing records do include substantial time spent

conducting and defending depositions and opposing defendants' motion for summary judgment.

Much of that time was undoubtedly dedicated to claims that were dismissed. Therefore,

although plaintiff was successful at trial on one of the two remaining claims, the number of hours

billed for depositions and opposing summary judgment should be halved.

As noted above, plaintiff seeks an award of fees based on 306 hours of Aboushi's time

and 84.5 hours of Calcano's time. Aboushi spent 53 hours and Calcano spent 3 hours opposing

summary judgment and conducting and defending depositions. Their time will therefore be

reduced by 26.5 and 1.5 hours, respectively, leaving 279.5 hours for Aboushi and 83 hours for

Calcano. After a further reduction of 20% for the reasons discussed above, plaintiff is entitled to

an award based upon 223.6 hours of Aboushi's time and 66.4 hours of Calcano's time. I

therefore conclude that plaintiff is entitled to a fee award of $86,560, comprised of 223.6 hours

at $350 per hour, or $78,260, for time spent by Aboushi, and 66.4 hours at $125 per hour, or

$8,300, for time spent by Calcano.

Aboushi may also recover his reasonable expenses related to this litigation. He requests

$4,375.55, an amount which takes into account the accurate cost of the filing fee. Although

defendant objects that Aboushi's request for costs is "lacking in backup documentation," Def.

Mem. at 5, Aboushi has provided invoices for each of the deposition transcripts for which he

requests reimbursement. Docket Entry 92-3. The other costs for which he requests

reimbursement are also reasonable and identified with sufficient specificity in his invoice. *See*

Docket Entry 92-2, at 4. However, in light of the fact that many of plaintiff's claims were

dismissed on summary judgment, I find that Aboushi's research fees should be reduced to reflect

that much of his research likely dealt with those unsuccessful claims. Aboushi identifies $568 as

research fees; that number is reduced by 50% to $284.  For the same reason, the deposition fees

of $2,963.88 should be reduced by half, to $1,481.94.  Therefore, Aboushi may be reimbursed

for the expenses of this litigation in the amount of $2,609.61.


## CONCLUSION

For all the reasons stated above, plaintiff's motion for attorney's fees is GRANTED in

the amount of $89,169.61, comprised of $86,560 in fees and $2,609.61 in expenses.


**SO ORDERED.**


_____/s/_____

**STEVEN M. GOLD**
**United States Magistrate Judge**


Brooklyn, New York
April 22, 2015


U:\MHS 2014-2015\Stone v. Port Authority\Motion for Atty's Fees\AttysFees final.docx